Case number 12-1635, NG2 Distributing Incorporated, a California corporation at all, versus Innovation Ventures, LLC. Arguing not to exceed 15 minutes per side. Mr. Tomey, the appellant. Good morning, Your Honor. James Tomey appearing on behalf of the appellants in this first case. I think we have two cases involving the same or they're going to take them one after the other. If they're not consolidated, I'd like to reserve three minutes for rebuttal. If they are consolidated, I'd like five minutes for rebuttal. Well, they're not consolidated unless, on this docket, right, on the docket they're not, unless counsel would like to consolidate them this morning and argue them together. Your Honor, if it's fine with us, I don't know that we would need a whole hour. Oh, I don't think you would. I think we can use 15 minutes per side consolidating both arguments. And I think that would be best. And then I would reserve three minutes for rebuttal, Your Honor. That would be fine. And again, James Tomey appearing on behalf of the. I just want to make sure the clerk has that noted. Great. On behalf of defendants, appellants, N2G Distributing, Alpha Performance Labs, and also Mr. Jeffrey Deal. In the words of the great philosopher, this looks like deja vu all over again because the last time I was here, it was an energy shot case and Judge Clay was the presiding judge. But that was an appeal of a summary judgment motion. This is an appeal of the denial of a motion for new trial. And I think this has been well briefed. I'd just like to hit some of the highlights. We believe that we deserve a new trial and that with respect to evidentiary issues for the following reasons. And again, I'm hitting the highlights. I think the great weight of the evidence section of our brief was well briefed and we'll rely on that. First of all, we were denied access to the defendant, excuse me, the plaintiff Innovation Ventures product formulas during the discovery phase of this case. And why that is important is because at the time of trial, our expert witness could not compare product formulas to determine whether our products were as effective as the defendant's products or even more effective. So we were denied that opportunity even though there was a protective order entered in the case. Why is that even the standard? I'm sorry, Judge? Why is it even the standard to determine whether you were more or less effective than the other? It isn't. I agree. It's not the standard in discovery. That's what you just said was the problem. Well, that... You didn't get the other guy's formula, but that would not have established whether your formula produced this 6, 7, and 14 hour energy boost in any event. So I'm still trying to figure out what difference it makes. Well, our expert indicated that it would make a difference. It would have been helpful to determine whether, for instance, their product had 180 milligrams of caffeine and ours had 2 milligrams and therefore was more effective and would last a longer period of time. But your expert didn't do a study of your own product. Well, studies are expensive. They had a study. We would have liked to have compared our products to theirs and used their study in order to form his expert opinions. We were denied that opportunity. I mean, the standard in discovery is pretty loose. If it's relevant or if it will lead to relevant evidence, we were not given that opportunity. But it seems to me you're almost saying, look, you're accusing us of lying in the effectiveness about our product and our defense is you lied too. No, we didn't say that. Our defense is that you were just... They say theirs last 5 hours. You, to sell more, you say, well, geez, ours is better at 6, 7, and 14 hours. Right, and to show that... They did a study of 5 hours. Yes, they did. You have no study of 6, 7, or 14 hours. Well, their study went to the 6 hour mark. Their study, they did show effectiveness at 6 hours. That's what their study showed. And if we could show that our ingredients were similar to theirs, we could also show that. Okay, the next item that we believe there was error is the so-called herbal nitro issue. Our client, Mr. Diehl, had an ex-partner in California, developed a product, had a very similar trade dress. Judge Timlin, Central District of California, indicated it was not a trade dress infringement. We could not use that opinion to show why Mr. Diehl had no to do that. You say you're not allowed to do that. He testified to that. But testimony of a lay witness... He was involved in another case, he got an opinion, he read it, he took it into account, that's why he did what he did. No, he didn't testify with respect to the opinion. We couldn't get that evidence in. The judge instructed us not to talk about other cases. And that leads us to our next issue. Okay, the next item is the testimony of a lay witness compared to the opinion of a federal court judge. We all know what holds greater weight. It's the opinion of the judge, of course. Okay, and that leads us to the next issue. Judge Borman indicated that the parties could not talk about other cases or the results of other cases. My opposition interjected issues regarding the Monster Beverage case that was... where my client was also sued in California. Judge Borman indicated in a ruling on a motion to settlement in that case, they elicited the testimony, they asked Mr. Diehl if, in fact, he paid money in settlement of that case. He said, yes, I did. He had to answer truthfully, obviously. And they violated the motion, the court's order in Lemonnet. Who mentioned the settlement first? Did they mention it in a question or did your client mention it in an answer that they then followed up on? They asked him in a question. The question was, and you paid money, didn't you? And he said, yes, I did. But in response to what? In response to a line of questioning that they were eliciting, that they were asking, a line of questions that they began asking. They say they didn't ask anything about a settlement until your client volunteered information about a settlement in an answer, not prompted by a question, and they then followed up on it. I don't think that's accurate. When you read the record, Judge, I don't think it's accurate. I think they began the questioning about the Monster Beverage case and they indicated, well, you know, that case is over and you paid money, didn't you? And I think that was prejudicial to our position. Direct violation of the court's order in Lemonnet. And we believe for that reason alone we are entitled to a new trial. It had to deal with Mr. Diehl's credibility, his credibility with that state, with that issue in this case. Now I don't know why they did. One of the other issues in connection with this case is whether the judgment covered all of the findings of the jury. We believe that the judgment should have included items where the jury found in favor of the defendants. And the reason for that is this. The jury found that the caution statement that we used on our products did not cause any damages to the product. The caution statement is simply that. It's a caution statement. Any actual damages. You buy the product, you throw it away, you consume the product, you don't buy the caution statement. It's not copied and sold. Okay, the reason why this is important is because this issue has come up in other cases. In fact, I have one other case where this is an issue where the caution statement causes any actual damages. If this issue is already litigated, the collateral stopper will be strong. We think that should be in the judgment, should have been in the judgment. Okay. Is the issue whether the caution statement is a part of the trade dress, is that it? No, that's not part, no, that's not part of the trade dress issue. What, well maybe, we were, is that an issue? We were exonerated. We were exonerated with respect to the caution statement. We would have liked to have that in a judgment rather than just a verdict form. Okay, and the judge did not the plaintiff suffered no actual damages as a result of the defendant's use of an identical caution statement, period. It is hereby ordered in a judge. We would like that because that would be collateral estoppel in other cases. And they have asserted it in other cases. Can you explain it? Why is that a reversible error in this case? It's not. It's not a reversible error warranting a new trial. It's just a correction of the judgment. That's why I bring it up. Okay, and the final issue is the trade dress issue and whether the, whether the safe distance rule applies in the Sixth Circuit now. Safe distance rule is akin to probably branding somebody on the forehead as, with an eye, as an infringer. Yes, the various district courts have talked about the safe distance rule. If you've been found to be an infringer in the past, then it's, it's, you can't compete as freely in the case. This court has not applied it yet. Several district courts have, but I think it's limited to trademark, not trade dress. Judge Borman applied it to trade dress in this case. And the reason why we think it should not be applied in trade dress cases is because trade dress is more subjective. It's the overall look of the product. It's, you know, Judge Timlin, for instance, in California, and the other product involved with my client, said no, it's not similar. Judge Borman, in this case, said yes, one of the new product labels is too similar. Okay, and so it's, it's too subjective of a standard to be applied in trade dress cases, and that's why we would suggest that this court not apply the safe distance rule in trade dress cases as opposed to trademark cases. And for the rest of the issues, we'll rely on the brief, and if the court has any questions, I'll be happy to answer them if I can. All right, since we're combining things, did you want to address the contempt issue? Yeah, the contempt issue is somewhat moot at this point. Judge Borman did find Mr. Diehl, my client, in contempt because some of the enjoined product was mixed in with new product and sold on a couple of occasions. That really is not part of, well, I guess it is part of the appeal, but it's not a very strong appeal, let's, let's, let's say that. But there was another motion to hold Mr. Diehl in contempt for a second time, and that involved the, what we consider to be the non-infringing new trade dress, and they consider that to be the new infringing trade dress. Again, the safe distance rule applies in that context. Okay, so they file another motion, a second motion, to hold Mr. Diehl in contempt. The judge Borman denied that motion, so the labels on products that were not turned over, they're not involved anymore, they did not appeal Judge Borman's ruling on their second motion for contempt, so that is probably moot at this point. Labels other than the ones that we turned over are not an issue. It seems to me something's either moot or it's not moot, it's not somewhat moot, so do we need to address that contempt issue or not? Only with respect to the safe distance rule as to trade dress, because he was held in contempt on that, there were attorney's fees paid, and, and obviously if, if this court rules otherwise, you know, he might be entitled to get those back. But that's the only, that's the only issue that's involved in the, in the contempt, is whether the safe distance rule applies to trade dress. Judge Borman did identify the elements of the trade dress that he felt were infringing, and there was some disagreement as to what he said, but apparently he's clarified that now, and that's the only issue left in, in that area. All right, thank you. Thank you. Good morning, your honors. May it please the court, Mark Cantor on behalf of the Appley Innovation Ventures. I want to clear up a couple quick points on the record. The copyright claim, summary judgment was granted a copyright infringement, and the defendants were enjoined from using the copyright, but no damages were awarded. So the copyright claim was not decided in their favor, the jury just didn't give any damages on it. With respect to the second motion for contempt, Judge Borman denied that without prejudice, so that's simply not an issue here, and that may still be raised below depending on his injunction. You know, this is an interesting appeal because they raised seven different issues on appeal, you know, basically the judge and the jury got it all wrong, but the one thing they don't do is they don't even cite to Judge Borman's opinion addressing every one of their issues. They basically filed their appeal brief was the same as their motion for a new trial. Judge Borman fully answered that at docket number 351, and they don't even address Judge Borman's opinion here. The standard is an abuse of discretion. I don't see how they can argue he abused his discretion when they don't even address what he decided. This is a very simple case. The defendants copied plaintiff's product and tried to trade on it. We got a preliminary injunction. No matter how we tried to resolve the issues, he kept coming out with new products. He would keep getting as close to the line as he possibly could. The evidence was so clear below on all of the Frisch's factors that he violated the trademark and trade dress. We tried to make it very easy for the jury. If you look at the verdict form, we gave them products to circle. The jury did a very good job. Some they found, most they found for us, you know, some they found for them. You know, the only argument they really make on appeal is that there was no evidence of intent, intent to copy. Intent's always a very important issue in these types of cases. Well, they say the fact that their client testified that he didn't copy it is dispositive of the issue. Well, the evidence is contrary to that assertion. Circumstantial evidence is usually used for intent. Very few people get up there and say, hey, I did it. I copied it. I knocked you off on purpose to try and trade on you. So we have the caution labels the same. The products look the same. Anyone looking at this would know that they intentionally copied us. In fact, that really wasn't much of an issue. Judge Borman awarded us attorney fees and in his opinion, docket 355 page 7, he deliberate to constitute an exceptional case meriting award of attorney fees. We think there's more than ample evidence in the record. It's in our brief. It's in the appendix. This is a very simple case of trademark and trade dress infringement. Now, the next thing they raise is this inconsistent verdict. We think they waived it. Under Rule 49B, you have to raise it before the jury goes out. We took the verdict. He asked the jury to be polled and then the judge dismissed the jury and said, do you guys got anything else? And it was never raised. So the inconsistent verdict is waived and the verdict is consistent. All you have to do is take a look and you can see how thoughtful the jury was with it. Now, the one thing counsel has spent some time on here are these discovery rulings, the unlimited rulings saying we weren't allowed to discuss other litigation. Well, when I was preparing for this hearing, I went back and read everything. I can't find the unlimited ruling and the reason I can't find it is Judge Borman didn't put it on the record. We were deposed, we were taking the testimony of Mr. Deal. This issue came up. We go to the sidebar. We start discussing it and then Judge Borman says, this doesn't need to be on the record. Everybody take a break. So what was the ruling unlimited? Well, this is his opinion, exactly what his ruling was. And what Judge Borman said was, like, and this is on page 15 of docket number 351, like defendants prior litigation involving Herbal Nitro discussed Supra, plaintiff was able to introduce evidence about the prior litigation involving Hanson but not any judicial opinions or attorney filings in this case. So what Judge Borman told us, like I said, it's not in the record. That's the only place I can find it memorialized was, look, you can talk about the fact that there were other lawsuits but I don't want you putting any pleadings in. I don't want any opinions in. I don't want any complaints in. And there's a very good reason for that because a lot of those opinions will have law in them and a jury could read that law and be misled. Only the judge should instruct on the law. So we were allowed to question all these controversies. I really think this is much ado about nothing in connection with the evidence that was taken below. If you look at the record and as we've cited, counsel for defendants kept repeatedly talking about our other litigation that we were involved in. So it was a pretty even playing field and Judge Borman did a very good job calling balls and strikes on that. And in response to your question earlier, did his client raise the issue of the of the lawsuit first? Of course he did. And I think his answer was basically an absolute lie. He said they were gonna pay him where the fact was he paid them. And that's when we followed up on the questioning. So I think on the motion at Lemony which involves the herbal nitro case, the monster energy case, I think those really don't have much merit. Finally, their judgment issue is kind of interesting. They want the court to enter a judgment on what we didn't prove, what we didn't win on. In other words, they want a judgment that they can take to people say, ha, we won on this, we won on that. And we looked at that. It's a very unusual request. I mean, I haven't really seen it come up over the years. It was something they wanted to use to take to the market to say, this is okay, that's okay. And Judge Borman said, no, I'm just gonna rule on what the jury found. And I don't think that's much of an issue. I don't really know why it's even an appealable issue in this case because I haven't seen any law that supports what they're asking the court to do. With respect to the contempt motion, the contempt motion is the only issue that I think is interesting in this case because I think the judge got it right on contempt. Basically, what happened was is even after we got the injunction, he continued to change his products. And he also continued to sell products that were specifically enjoined. So we moved for contempt. The contempt was on two bases. One is, hey, you're selling stuff that's right here in the injunction. The picture's here, you're selling it. And he lied to the court saying he'd gotten rid of it and we bought it. And he was still selling it. There is no doubt, that alone justifies contempt. The second issue is he was also selling modified products as well. And the judge found those were too close to what he enjoined and said those also violate it in the form of basis for contempt. Now, their issue on the modified products is that the safe distance rule shouldn't apply to them. Okay? The safe distance rule, I don't know about stamping someone's forehead with an eye, it's more like a dog bite case. Dog gets one bite, he starts nipping at people again, he's got a problem. The safe harbor rule is basically, if you have been found guilty of violating someone's rights and you've been enjoined and told to change, you have to be a safe distance away from what you did before. You don't stand in the same shoes as someone starting from scratch. Now, it's an issue that's not weighed in on it either way since the Lanham Act was passed. In the 1930s, we cited a case in the 1930s where it was used in a case, but since the Lanham Act, the Sixth Circuit really doesn't have an opinion that goes either way on whether the safe distance rule should apply. We've cited to the other circuits which have adopted it and I believe that the rule has, makes common sense that you know, once you violate someone's rights, you don't get the same rights as someone else. Has any circuit said that the safe distance rule does not apply to trade? I've never, I've never seen it split that way. That's why I find the argument kind of interesting. I've never seen it split that way. Trade dress is simply a subcategory of trademarks. There's nothing particularly unique about it, it's just not a name or a symbol. It can be an appearance of a product, it can be packaging, and as we all know, it can be the product itself can have a trade dress. It's just a trademark at the end of the day. So I haven't seen any court that's ever done that before or split it out that way. I don't think there's any basis to split it out that way, that you can get closer to some, you can violate someone's trade dress rights easier than you can violate their trademark rights, because that's basically what, what they're asking for. And I don't know if this is the case for the Court Tivano-Pine on the safe distance rule, because he didn't move further away in this case. This is why I think this is a little bit of a red herring, it's not really the best case to do it. If you look at our brief, pages 21 to 23, this is on our contemporary, you'll see what was enjoined and then you'll see here's the asserted trade dress, here's what was enjoined, and here's what he switched to. And the one he switched to was closer to our product than the ones that were enjoined. So the safe distance rule doesn't even apply in this case, because he went the other way, he didn't move further away, he moved closer. And so, but if, I don't, in my opinion, I think it's a very interesting issue, whether the Sixth Circuit wants to do it in this case or not. I don't know, I don't think this is the best case or that the issues have been flushed out enough or the record really calls for it, but of course that's that's your decision. Other than that, I don't, unless the court has any questions, that's all I have. Apparently not. Thank you. Just a few comments in rebuttal. Counsel indicated that he couldn't find Judge Borman's in limine ruling and didn't know what it said. Our motion in limine is at docket number 249 in the trial court, and Judge Borman's ruling on the motion in limine is at docket 281, and we did designate that in our brief as part of the record. So it is in there, and Judge Borman didn't make the ruling and it was violated. That's number one. We believe that trade dress is somewhat unique because it's different than trademark. Trademark, you have a name, and if there's a subtle change in the name, some of the courts, district indicated that the safe distance rule does apply in those circumstances. On the other hand, as we just indicated, that trade dress is somewhat unique in the trademark and the intellectual property field because it's a general perception, perception of the beholder perhaps. So we think that there should be some minimal standards to apply the safe distance rule in trade dress cases. What do you say the law of the other circuits is with respect to applying a safe distance rule to trade dress? I, frankly, I looked but was not able to find anything with that distinction. All the cases that I was able to locate, including a couple district court cases in this circuit, were talked about the names of the companies or the names of the products. I think there's a case out of the... Not talking about trademark, not talking about district courts, not talking about this circuit. I was not... Other circuits, are there any circuit holdings on either going either way on whether the safe distance rule applies to trade dress? I was not able to find any. So you think this would be a case of first impression not only in this circuit but in the United States? It would appear that way at the circuit court level, certainly. Thank you. All right, thank you very much. Case is submitted.